

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO.    7:18-CV-303 |
| | § | |
| 26.000 ACRES OF LAND, MORE OR | § | |
| LESS,  SITUATE IN HIDALGO COUNTY, | § | |
| STATE OF TEXAS; AND THE PHARR | § | |
| ORATORY OF ST. PHILIP NERI OF | § | |
| PONTIFICAL RITE, A TEXAS | § | |
| NON PROFIT CORPORATION, | § | |
| | § | |
| *Defendants.* | § | |

_____

**UNITED STATES' REPLY TO DEFENDANT PHARR ORATORY'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION
FOR ORDER OF IMMEDIATE POSSESSION**

_____

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America ("United States"), Plaintiff herein, respectfully submits this

reply to Defendant Pharr Oratory of St. Philip Neri of Pontifical Rite Response in Opposition to

Plaintiff's Motion for Order of Immediate Possession ("Def. Resp.") (Docket #12) and Defendant

the Pharr Oratory of St. Philip Neri of Pontifical Rite, a Texas Non Profit Corporation's Original

Answer ("Def. Answer") (Docket #8). Plaintiff respectfully requests the Court to dismiss or deny

Pharr Oratory's objections and defenses as a matter of law and would show the following:

> **Issue:**

> 1. **Plaintiff's Opposed Motion for Order of Immediate Possession (Docket #11)
>    should be granted because Defendant's objections fail as a matter of law. The sole
>    defense which may be raised in a condemnation itself is that of lack of authority
>    to take in the petitioner.**

## FACTUAL AND PROCEDURAL BACKGROUND

1.      Since June of 2018, Plaintiff and Defendant, Pharr Oratory of St. Philip Neri of Pontifical Rite, a Texas non-profit corporation (hereinafter referred to as "Pharr Oratory") and its counsel have been negotiating and discussing Defendant's concerns regarding just compensation and government personnel potentially disrupting religious activity on the property.

2.      Unable to reach an agreement, on September 28, 2018, for purposes of conducting surveys to determine site suitability for infrastructure along the United States - Mexico border, the United States filed a Complaint (Docket #1) and Declaration of Taking (Docket #2) concerning property located at

> The South Twenty-Six (26) acres of Lot Three (3), Block Fourteen (14), A.J. McColl Subdivision of Porcion 68, Hidalgo County, Texas, SAVE AND EXCEPT that part underlying canal right-of-way on the South side of subject property, as per map recorded in Volume 21, at Page 958 Deed Records of Hidalgo County, Texas; reference to which record is here made for all purposes.

*See* Schedule C of Plaintiff's Declaration of Taking (Docket #2-1).

3.      Plaintiff deposited a nominal amount ($100.00) as just compensation into the registry of the Court because the impact on Pharr Oratory's ability to use the property is minimal, if any. Further, landowners are compensated separately in the event any property is damaged.

4.      On October 23, 2018, Pharr Oratory filed its Original Answer (Docket #8) and raised numerous objections and defenses. No discovery has been completed as of the date of this filing.

5.      On November 20, 2018, Plaintiff filed an Opposed Motion for Immediate Possession (hereinafter the "Motion") (Docket #11). *See* Pl. Opp. Mot. for Order of Immediate Possession. Pharr Oratory filed its response the same day. *See* Def. Resp. to Pl.'s Opp. Mot. for Order of Immediate Possession ("Def. Resp.") (Docket #12).

6.     On November 21, 2018, an Unopposed Joint Abbreviated Discovery Plan (Docket #14) was filed and on November 26, 2018, the Court approved the Order for a Joint Abbreviated Discovery Plan (Docket # 16).

7.     Plaintiff's taking is limited to a temporary Right of Entry to allow government officials to conduct an overall site assessment of the property to determine its viability for border security infrastructure. *See* Ex. 1-1 Right of Entry.

8.     The temporary right of access expires once government contractors complete fieldwork for a metes and bounds survey, appraisal, design/build assessment, and environmental assessment. *See* Ex. 1-3 – Aff. of Rhonda G. Brown.

9.     Contractors require access to the property to complete the assigned fieldwork and will communicate in advance and independently with landowners and tenants. *See* Ex. 1-1 - Right of Entry.

10.     A longer access period than "a few days" (Docket # 8, ¶ 7, Def.'s Answer) is necessary to complete the overall site assessment because site assessment is completed in different phases by separate and distinct contractors. *See* Ex. 1-3 – Aff. of Rhonda G. Brown.

11.     Further delay in evaluating the property would cause Plaintiff to incur additional expense if denied access to the property because survey contractors have already started surveying the area surrounding this property with minimal to zero intrusion to landowners and tenants. *See* Ex. 1-2 – Aff. of Loren Flossman and Ex. 1-3 – Aff. of Rhonda G. Brown..

12.     Although Pharr Oratory voiced concerns that Plaintiff's activities would infringe upon its First Amendment right to free exercise of religion, Plaintiff's taking does not require Pharr Oratory to relocate or modify any behavior or usual religious practices.

13.     Further, Pharr Oratory and its residents have not relocated or modified or changed their religious practices.

## ARGUMENT

14.     Eminent domain is an innate right of the sovereign limited only by the Fifth Amendment requirement of just compensation. *United States v. Carmack*, 329 U.S. 230, 255 (1946). ("The power of eminent domain is essential to a sovereign government. If the United States has determined its need for certain land for a public use that is within its federal sovereign powers, it must have the right to appropriate that land.").

15.     The only valid defense to a taking is whether the property was acquired for a congressionally authorized public purpose. *United States v. 162.20 Acres of Land, More or Less, Situated in Clay Cty., State of Miss. (Clay County)*, 639 F.2d 299 (5th Cir. 1981). All other challenges are improper.

> [A]ssertions of the defense of lack of authority reveals that federal courts do not second-guess governmental agencies on issues of necessity and expediency when condemnation is sought; such matters are within the discretion of the legislature or of administrative bodies by delegation, and the concept of justiciability limits judicial review to the bare issue of whether the limits of authority were exceeded."

*Id. See generally Berman v. Parker*, 348 U.S. 26 (1954); *United States v. 2,606.84 Acres of Land in Tarrant County, Tex. (Tarrant County)*, 432 F.2d 1286 (5th Cir. 1970), cert. denied 402 U.S. 916, 91 S.Ct. 1368, 28 L.Ed.2d 658 (1971); *O'Brien v. United States*, 392 F.2d 949 (5th Cir. 1968); *Swan Lake Hunting Club v. United States*, 381 F.2d 238 (5th Cir. 1967); *2,953.15 Acres of Land, More or Less, in Russell County, State of Ala. v. United States*, 350 F.2d 356 (5th Cir. 1965).

16.     Under the Declaration of Taking, 40 U.S.C. § 3114, the filing of a declaration of taking and deposit of estimated compensation vests title in the Unites States. "The district court, powerless to dismiss the proceedings, performs an almost ministerial function in decreeing the

transfer of title." *See United States v. Cobb*, 328 F.2d 115, 116 (9th Cir. 1964); *United States v. 2,974 Acres, Clarendon County, S.C.*, 308 F.2d 641, 643 (4th Cir. 1962); *United States v. Hayes*, 172 F.2d 677, 679 (9th Cir. 1949); *United States v. Carey*, 143 F.2d 445, 450 (9th Cir. 1945). *Clay County* at 303 (5th Cir. 1981).

17.     The purpose of the Declaration of Taking Act is to give the Government immediate possession of the property and give the owner immediate compensation, in the form of estimated compensation, in return for title to the land. *United States v. Miller*, 317 U.S. 369 (1943). The Supreme Court reaffirmed that the Declaration of Taking Act immediately confers to the United States title and a right to possession in *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1 (1984). As stated in *Narramore v. United States*, Congress enacted the Declaration of Taking Act "[t]o give the Federal Government immediate possession of condemned property and avoid delays in federal construction projects." 960 F.2d 1048, 1050 (Fed. Cir. 1992). *See Miller* at 381.

18.     The taking of the right of entry in this case is congressionally authorized by the 2008 Consolidated Appropriations Act (amending Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")). Consol. Appropriations Act, 2008, Pub. L. 110-161,121 Stat. 1844 (Dec. 26, 2007). The 2008 Consolidated Appropriations Act directs the Secretary of Homeland Security to "identify [locations] along the southwest border where fencing would . . . most effective[ly] deter[] smugglers and aliens attempting to gain illegal entry into the United States. *Id*.

19.     All of Defendant's remaining objections and defenses are invalid as a matter of law.

    **I.**    **Defendant's First Amendment objection under the "Free Exercise" clause is without basis and is not a defense to eminent domain.**

20.    Relevant portions of the First Amendment state: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . . or of the right of the people peaceably to assemble; and to petition the Government for a redress of grievances."

> In determining whether challenged government actions violated the Free Exercise Clause of the First Amendment, those decisions used a balancing test that took into account whether the challenged action imposed a substantial burden on the practice of religion, and if it did, whether it was needed to serve a compelling government interest.

Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751, 2760, 189 L. Ed. 2d 675 (2014).

21.    According to Defendant's pleadings, the Government has not substantially burdened Defendant's religious practices or its rights to those practices. The Defendant simply suspects its freedoms *may be* infringed upon or burdened, but at this time the Defendant can only allege the possibility of the potential of future harm. Further, the Defendant can only allege Plaintiff's temporary taking will "affect" and "greatly intrude upon" Defendant's right to freely exercise its religion and not that its right has been substantially burdened. *See* Def.'s Answer at ¶ 8, pg. 4 ("the proposed temporary taking *could certainly impede or interrupt* the Freedom of Religion for the priests and seminarian living on the property. . . " (emphasis added)) and Def.'s Resp. at ¶¶ 1 and 5, pg. 2 ("Defendant would show that the temporary right of possession would not be minimally intrusive but would in fact *greatly intrude* upon the Defendant's property and First Amendment Right of Free Religion." (emphasis added)).

22.    Furthermore, the Government has not substantially burdened Defendant's religious practices or its rights to those practices. *See Hobby Lobby Stores, Inc.* The Defendant simply suspects its freedoms *may be* infringed upon at some point in the future. To date, the Defendant has not complained of any actual impediment to its right to practice its religion, nor has it

complained of any modifications it has been required to undertake in order to accommodate the Government.

23.     The Court should overrule or dismiss the Defendant's First Amendment objection as a matter of law because it is not a valid defense to a taking and Defendant's free exercise has not been substantially burdened.

**II.     The Court should grant Plaintiff's Motion because it acquired the property under the Declaration of Taking Act, is entitled to immediate possession, and the alleged defects of Plaintiff's affidavit do not create a defense to the taking.**

24.     The purpose of the Act is to give the government immediate possession of the property and to give the owner immediate compensation, in the form of estimated compensation, in return for title to the land. *Miller* (1943).

25.     Plaintiff's Motion at Part III(B) outlines Plaintiff's immediate need for possession to Defendant's property: prior to construction, Plaintiff must identify staging and work areas on the property, in addition to the property's suitability for border infrastructure. Further, survey contractors have already begun fieldwork in the area surrounding Defendant's property; if survey contractors cannot access the property within the next sixty days Plaintiff will incur additional expense. *See* Ex. 1-2 - Aff. of Loren Flossman at ¶ 4, pgs. 1-2 and Ex. 1-3 – Aff. of Rhonda G. Brown at ¶ 6.

26.     The Secretary of Homeland Security has determined that it is necessary to waive certain laws in order to ensure the expeditious construction of border security infrastructure in Hidalgo County, Texas.  *See* Determination Pursuant to Section 102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 83 FR 51472-02. The Secretary of Homeland Security has already waived various environmental, natural resource, and land management laws for fourteen (14) miles along the International Boundary and Water Commission

levee in Hidalgo County. While this fourteen mile section does not include Defendant's property, a waiver is required and will be sought at the appropriate time in the future. *See* Ex. 1-3 - Aff. of Rhonda G. Brown.

27.     The Court should overrule or dismiss the Defendant's objections based on alleged defects in Plaintiff's affidavit and studies that have been waived because they are not valid objections to a taking as they do not relate to the authority of the petitioner.

**III.     The Court should grant Plaintiff's Motion because questions of just compensation are for the trier of fact and do not constitute a defense to the taking.**

28.     Defendant's attempts to challenge the amount of and basis for compensation due for the subject property are improperly raised here and do not constitute a defense to the taking. The amount of just compensation must be determined by the trier of fact; this Court need not and cannot address that issue at this time. Rule 71.1(e) expressly distinguishes between "objections and defenses to the taking" and "the amount of compensation to be paid." FRCP 71.1(e)(2)-(3).

29.     A landowner "*at trial on compensation* . . . may present evidence on the amount of compensation to be paid and may share in the award" regardless of an earlier failure to answer or even appear. FRCP 71.1(e)(3) (emphasis added); *see United States v. 50 Acres of Land*, 469 U.S. 24 (1984) (weighing methods of determining amount of just compensation).

30.     The deposited estimate of just compensation is just that—an estimate.  Its "principal purposes" and functions are "[u]ndoubtedly [] to minimize the interest burden of the Government in a condemnation proceeding, and to alleviate the temporary hardship to the landowner[s] from the immediate taking and deprivation of possession."  *McKendry v. United States*, 219 F.2d 357, 358 n.5 (9th Cir. 1955) (citations omitted).

31.     While the Defendant will have an opportunity to present evidence on the amount of just compensation under FRCP 71.1(e)(3), the factual issue does not create a legal defense to the taking.

Thus, Defendant's claim that the estimate of just compensation is inadequate should be overruled as a matter of law.

**Defendant reiterated its objections and defenses in its Response to Plaintiff's Motion: "But the real basis of Defendant's complaint is all the other objections and defense relief upon in its answer." Def.'s Resp. at ¶ 6, pg. 2. Plaintiff will address Defendant's remaining objections and defenses in the order they were raised in Defendant's Original Answer.**

### IV.    The Consultation Clause of 8 U.S.C. § 1103(b) and Note is not a legal defense to a condemnation action and should be overruled by the Court.

32.    The plain language of 8 U.S.C. § 1103(b) make clear the consultation clause is no defense to a condemnation action. Under the "Savings Provision" of 8 U.S.C. § 1103(b)(1)(C)(ii)(II), Congress specifically excluded eminent domain laws from the effects of the "Consultation" clause at § 1103(b)(1)(C)(i): "Nothing in [the consultation] subparagraph may be construed to . . . **affect the eminent domain laws of the United States**," (emphasis added).

33.    Further, Defendant admits Plaintiff satisfied the consultation requirement: "efforts were made to negotiate the acquisition of the property interest sought . . . Defendant acknowledges that the Plaintiff's representatives consulted with the Defendant and its attorney and in fact visited the site in question." Def. Answer at ¶¶ 8 and 3, pg. 3.

34.    As stated by the Defendant, Plaintiff consulted with Pharr Oratory and its attorney and visited the property in an attempt to reach an agreement. Pharr Oratory's objection is without merit on its face. The requirement for consultation is only that consultation occur; not that each landowner's every concern is satisfied.

35.    Further, Pharr Oratory's claim that no request for temporary taking should have been filed following the consultations "based on the religious activities that take place on the property, the residence, library and other structures," have no relation and make no connection to the consultation requirement of 8 U.S.C. § 1103(b)(1)(C). Def. Answer at ¶ 3, pg. 3.

36.     The Court should overrule Defendant's objection under the Consultation Clause as a matter of law.

**V.      The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"), 42 U.S.C. § 4601 is not a legal defense to a condemnation action and should be dismissed by the Court.**

37.     Like the Consultation Clause, the URA does not create a defense to a taking. In creating uniform guidelines for agency pre-condemnation procedures, Congress specifically refrained from creating any right of action for noncompliance with the URA. 42 U.S.C. § 4602; *United States v. 131.68 Acres of Land*, 695 F.2d 872, 876 (5th Cir. 1983).

38.     Courts have held that "[t]he test of the [URA] and its legislative history make it abundantly clear Congress expressly desired to deprive Federal courts of jurisdiction to entertain actions of this nature." *Paramount Farms, Inc. v. Morton*, 527 F.2d 1301, 1304 (7th Cir. 1975); *See also In Rhodes v. City of Chicago*, 516 F.2d 1373 (7th Cir. 1975). Congress anticipated that, "[f]ederal courts could be flooded with multiple litigation if landowners were vested with a cause of action based on alleged noncompliance with section 4651. Further, every Federal project would be subject to costly delays, and the public at large would become the ultimate victim." *Paramount Farms, Inc.*at 1305.Therefore, even if Plaintiff had failed to comply with the URA, that failure would not create a defense to this condemnation action.

39.     Further, Defendant has failed to provide any evidence Plaintiff is not complying with the URA in condemning the property and Defendant has made no allegations nor presented any evidence any of its residents have moved or have been displaced, and there have been no allegations or evidence its residents have moved any of their personal property from the real property as a result of the condemnation to qualify as a "displaced person" under the URA. *See* 42 U.S.C. § 4601(6)(A)(i).

40.     Thus, the Court should overrule Defendant's objection under the URA as a matter of law.

**VI.     Defendant's objection/defense at ¶ 5 of the Answer, that "any order of possession by done in compliance with 40 U.S.C. § 3114," is not a legal defense to a condemnation action and should be overruled by the Court.**

41.     Defendant's objection is unclear and is not a legal defense to a condemnation action.

42.     Under 40 U.S.C. § 3114(d)(1), this Court "may fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession to the petitioner; . . .".

43.     Plaintiff has provided a proposed order with its Motion and has at all times, and will continue to, communicate with the Defendant and its counsel concerning any attempts to enter the property in order to minimize any disruption to its regular activities (Docket #11).

**VII.     Pharr Oratory's objection under the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. §2,000bb through 42 U.S.C. 2,000bb-4, should be overruled as a matter of law because the standard under the RFRA is "substantially burden", not "significantly impact", and Defendant has failed to plead facts that would evidence Plaintiff's temporary access to the property support either standard.**

44.     The Court should overrule or dismiss Defendant's objection under the RFRA because plain language of 42 U.S.C. § 2000bb-1(a) states: "[g]overnment shall not *substantially burden* a person's exercise of religion even if the burden results from a rule of general applicability, . . ." (emphasis added). The Defendant has failed to state any facts to evidence how a temporary right of entry would substantially burden Defendant's religious exercise.

45.     The Supreme Court identifies a religious belief or believer as "burdened" when the government puts some kind of pressure on someone to act contrary to his or her religious beliefs. *See, e.g., Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 141 (1987) (noting a substantial burden is found when there is "substantial pressure on an adherent to modify his behavior and to violate his beliefs") (internal citation omitted).

46.      Here, Defendant has only made predictions of a future where Plaintiff's temporary right of entry could potentially affect Defendant's religious activities, none of which rise to the level of a "substantial burden" as required under the RFRA. In addition, it is highly unlikely photographing property and testing soil located "days" away from Defendant's library and chapel will interfere will Defendant's religious services and routines. In fact, it is more likely Plaintiff's presence will go entirely unnoticed.

47.      The Court should dismiss Defendant's objections under the RFRA as a matter of law and grant Plaintiff's motion for possession.

   **VIII.    Pharr Oratory's objection under the National Historic Preservation Act (NHPA), 54 U.S.C. §300101, should be overruled as a matter of law because the NHPA is not a defense to eminent domain, further, Defendant has failed to allege any facts that Plaintiff has failed to comply with the NHPA.**

48.      Pharr Oratory's objection under 54 U.S.C. § 300101, the "National Historic Preservation Act" or "NHPA", should be overruled as a matter of law because the statute cannot operate as a defense to condemnation. "The sole defense which may be raised against the condemnation itself is that of lack of authority to take in the petitioner." *Clay County* at 330.

49.      In *Clay County* the court considered the defense and compliance of NHPA in response to condemnation and determined the NHPA a "neutral act" and "that only an express statement by Congress that NHPA noncompliance is a defense to a condemnation itself would be sufficient to achieve that result." *Id. at* 304.

50.      Further, Defendant has failed to allege any facts Plaintiff has failed to comply with the NHPA which would require court intervention.

51.      The Court should overrule Defendant's objection under the NHPA.

   **IX.     Pharr Oratory's objection to the public purpose of the taking as excessive to the statutory authority under 8 U.S.C. § 1103(b) should be overruled as a matter of law because Congress has specifically authorized the taking for the public purpose**

> **of securing the United States – Mexico border as set forth in the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), 8 U.S.C. § 1103(b)(3).**

52.     Congress authorized this taking for the public purpose of securing the United States – Mexico border.

53.     The Constitution allows the United States to take private land for public use so long as just compensation is provided to the landowner. *See* U.S. Const. amend. V ("nor shall private property be taken for public use, without just compensation"). Once an authorized public purpose is shown, the only question for trial is the amount of just compensation. *See Berman* at 32-34.

54.     Courts have only limited power to review a congressional or agency determination of public use. As the Supreme Court has held, courts are required to show deference to such a public use determination, "' until it is shown to involve an impossibility.'" *Haw. Housing Auth. v. Midkiff*, 467 U.S. 229, 240 (1984) (quoting *Old Dominion Co. v. United States*, 269 U.S. 55, 66 (1925)); *Berman*, 348 U.S. at 32 ("when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive"). The "role of the judiciary in determining whether [condemnation] power is being exercised for a public purpose is an extremely narrow one." *Berman*, 348 U.S. at 32. The Supreme Court "has made clear that it will not substitute its judgment for a legislature's judgment as to what constitutes a public use 'unless the use be palpably without reasonable foundation.'" *Midkiff*, 467 U.S. at 240. (quoting *United States v. Gettysburg Elec. Ry. Co.*, 160 U.S. 668 (1896)). Whether a particular condemnation is necessary to fulfill the purpose for which Congress granted such authority is a question left to the discretion of the agency to which that authority was granted. *See Carmack* at 242-43 ("The judgment exercised by the designated officials . . . constitute[s] an administrative and legislative decision not subject to judicial review on its merits."). The Supreme Court has warned that "where the exercise of the eminent domain

power is rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the Public Use Clause." *Id.* at 230.

55.     Here, Plaintiff's condemnation of an interest in Defendant's property is reasonably and rationally related to a conceivable public purpose. As the Plaintiff noted in its Declaration of Taking filed against the Defendant's property, the purpose of this acquisition is to help secure the United States – Mexico border. Docket #2-1 (Schedule B, Public Purpose).

56.     Defendant's objection that the public purpose "exceeds the statutory authorization" fails to identify any way Plaintiff's acquisition of the subject property is not rationally related to the public purpose of securing the United States – Mexico border. In addition, Defendant's objection at ¶ 20, pg. 6, of Def.'s Answer is nonspecific in objecting to the declared public purpose. "To the extent that the Plaintiff may not have complied with all federal statutes before declaring a public purpose, Defendant objects." Defendant fails to identify any way Plaintiff's identified public purpose at Schedule B exceeds the statutory authority at 8 U.S.C. § 1103(b).

57.     The Court should overrule Defendant's objection as a matter of law because Congress has declared the public purpose of securing the United States – Mexico border, not the Plaintiff.

    **X.**     **Pharr Oratory's objection to the taking on the basis that it is not on "along the border", as defined by Article V of the Treaty of Guadalupe Hidalgo, should be overruled as a matter of law because it is beyond the Court's discretion to delineate the area "along the border" and the relevant statutes demonstrate the Department of Homeland Security was granted both authority and discretion to determine the placement of physical barriers and related infrastructure.**

58.     The Supreme Court has made clear that the courts are without jurisdiction to question the acquiring agency's determination of the project's boundary lines or what is needed to complete the project. The seminal case is *Berman v. Parker* in which the Court ruled:

> It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a

> particular tract to complete the integrated plan rests in the discretion
> of the legislative branch. *See Shoemaker v. United States*, 147 U.S.
> 282, 298; *United States ex rel. Tenn. Valley Auth. v. Welch, supra*,
> 327 U.S. at page 554; *Carmack*, 329 U.S. 230, 247.

*Id.* at 35-36. Based on *Berman*, it is for agency officials, and not the courts, to determine what property is needed to construct the security fence along the border; that is, DHS, and not the courts, determine what constitutes "along the border" and what particular property and interests therein are needed for the security fence project to be built "along the border."

59.     The Fifth Circuit noted an exception to the to the general deference to the condemnation decisions of an agency in *United States v. 2,606.84 Acres of Land in Tarrant County, Tex. (Tarrant County).* The court in *Tarrant County* held that in order to find a stated purpose in a condemnation was not for the real purpose, the district court must find that the taking was not necessary to achieve such purpose. The taking would have to be considered "arbitrary or capricious" or otherwise unreasoned in relation to the project. *Id.* at 1290 (5th Cir. 1970). Where land is close to a project and there is no evidence that the land taken was so disassociated with the project as to render the taking arbitrary or capricious, the "judiciary may not substitute its judgment" for that of an agency implementing a project enacted by Congress. *Id.* "The court should not and may not interfere with the exercise of the discretion given to [an agency and its] experts." *Id.* at 1291.

60.     Further, the Brownsville District Court held it "appropriate to continue to use [the] original IIRIRA definition of "along the border," i.e., following the border, but including land at some distance away from the border, for the purpose of its continued analysis of the subject takings under the *Tarrant County* standard." *United States v. 1.16 Acres of Land, more or less, situate in Cameron Cty., Tex.*, 585 F. Supp. 2d 901, 912 (S.D. Tex. 2008).

61.    The subject property being taken are not so disassociated with the border fence project as to be arbitrary and capricious under the *Tarrant* standard, and in fact, Defendant has not alleged any facts that could lead to the conclusion that the taking is an unreasonable decision.

62.    Defendant is primarily concerned with the proximity of buildings on the property to any potential "related structure". The purpose of the temporary right of entry is to conduct surveys for site suitability for border fence infrastructure; to address the precise concerns Defendant has articulated in its objection.

63.    The Court should overrule Defendant's "along the border" objection as a matter of law.

    **XI.**    **Pharr Oratory's objection to the taking on the basis that it does not conform with the Uniform Appraisal Standards for Federal Land Acquisitions, also known as the "Yellow Book", should be overruled as a matter of law because Plaintiff is only performing a temporary taking at this time, not an appraisal, therefore, no appraisal is necessary.**

64.    The Court should overrule Defendant's objection because the Uniform Appraisal Standards for Federal Land Acquisitions, also known as the "Yellow Book", is a treatise of federal eminent domain law and standard appraisal practice, and Defendant's objection is premature because Plaintiff's temporary taking is only to conduct surveys to determine site suitability for border security infrastructure. Therefore, no appraisal is needed at this time.

65.    Further, Defendant has failed to allege an action or inaction by Plaintiff that would indicate Plaintiff's noncompliance with the Yellow Book.

66.     Defendant's objection should be overruled as a matter of law.

    **XII.**    **Pharr Oratory's objection based on guidelines set out in the Department of Homeland Security's (DHS) Brochure entitled "Acquiring Real Property for Border Security Infrastructure in Support of the Secure Border Initiative", should be overruled as a matter of law because the guidelines are not laws or regulations Plaintiff is required to conform to, the Defendant has failed to indicate how Plaintiff has failed to follow any DHS requirements, and the DHS guidelines do not create a defense to condemnation.**

67.     The Court should overrule Defendant's objection because "guidelines" and other informational materials provided by DHS are not statutory requirements or regulations requiring compliance by Plaintiff. Further, Defendant has failed to indicate how Plaintiff has failed to conform to the brochure indicated by Defendant.

68.     Defendant's objection should be overruled as a matter of law because the referenced guidelines do not create a defense to eminent domain proceedings.

**XIII.**    **Pharr Oratory's objection based on DHS waivers potentially being in non-compliance with federal law and potential right to injunctive relief, should be overruled as a matter of law because Congress granted to the Secretary of Homeland Security the authority to waive all legal requirements that the Secretary, in his or her sole discretion, determines necessary to ensure the expeditious construction of barriers and roads authorized by section 102 of IIRIRA.**

69.     The Court should overrule Defendant's objection concerning DHS' waiver of various environmental statutes because the Secretary of Homeland Security, as authorized by Congress in Section 102 of the IIRIRA, has determined, "that it is necessary to waive certain laws, regulations, and other legal requirements in order to ensure the expeditious construction of barriers and roads in the vicinity of the international land border of the United States in Hidalgo County in the State of Texas." Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 83 FR 51472-02.

70.     Defendant's objection should be overruled as a matter of law because the waiver does not create a defense to a condemnation.

**XIV.**    **Pharr Oratory's reservation to file additional objections or defenses to the temporary taking should be overruled as a matter of law pursuant to FRCP 71.1(e)(3).**

71.     The Court should overrule Defendant's reservation as a matter of law because under FRCP 71.1(e)(3), "[a] defendant waives all objections and defenses not stated in its answer. No other pleading or motion asserting an additional objection or defense is allowed."

72.     The plain language concerning the procedural rules for condemnation proceedings prohibit Defendant's attempt to reserve the right to file additional defenses and objections to the condemnation.

73.     The Court should deny Defendant's request to reserve additional objections and defenses as a matter of law.

### CONCLUSION

For the reasons above, Plaintiff prays this Court grant Plaintiff immediate possession of the subject property and dismiss or deny Defendant's objections. Respectfully submitted,

<div style="margin-left:40%">

**RYAN K. PATRICK**
United States Attorney
Southern District of Texas

By:      *s/John A. Smith, III*
**JOHN A. SMITH, III**
Assistant United States Attorney
Southern District of Texas No. 8638
Texas Bar No. 18627450
One Shoreline Plaza
North Shoreline Blvd., Suite 500
Corpus Christi, Texas 78401
Telephone: (361) 888-3111
Facsimile: (361) 888-3234
E-mail: jsmith112@usdoj.gov
Attorney in Charge for Plaintiff

And

**MEGAN EYES**
Assistant United States Attorney
Southern District of Texas No. 3135118
Florida Bar No. 0105888
1701 W. Bus. Hwy. 83, Suite 600
McAllen, TX 78526
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Megan.Eyes@usdoj.gov
Attorney for Plaintiff

</div>

And

**JESSICA A. NATHAN**
Assistant United States Attorney
Southern District of Texas No. 3313572
Texas Bar No. 24090291
1701 W. Bus. Hwy. 83, Suite 600
McAllen, TX 78526
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Jessica.Nathan@usdoj.gov
Attorney for Plaintiff

## CERTIFICATE OF CONFERENCE

Pursuant to local rules, on December 4, 2018, Plaintiff conferred with Defendant's counsel about the disposition of the motion. Counsel could not agree about the disposition of the motion.

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and sent a copy via ECF to the following counsel:

David Garza – dgarza@garzaandgarza.com

s/ John Smith

**Border Infrastructure Project(s)**                                **DACW63-9-18-_____**

<u>**U.S. CUSTOMS AND BORDER PROTECTION**</u>

<u>**DEPARTMENT OF HOMELAND SECURITY**</u>

<u>**Right-of-Entry For Survey and Site Assessment**</u>

The undersigned, hereinafter called the "Owner", hereby grants to the United States of America, hereinafter called the "Government", a temporary right-of-entry upon Owner's property described below, hereinafter called the "Property."  This right-of-entry is granted upon the following terms and conditions:

1. The Government's officers, employees, agents, and contractors shall have the right to enter upon the Property for the purpose of conducting environmental assessments and property surveys, including the right to temporarily store, move and remove necessary equipment and supplies; survey, stake out, appraise, bore and take soil and/or water samples, and perform any other such work which may be necessary and incidental to the Government's assessment of the Property for Border Infrastructure Projects in the Rio Grande Valley Sector area of responsibility.

2. This right-of-entry is irrevocable for a period of Eighteen (**18**) months from the date of this instrument.

3. The rights granted herein include the right of ingress and egress on other lands of the Owner not described below, provided such ingress and egress is necessary to access the Property and is not otherwise conveniently available to the Government.

4. All tools, equipment, and other property taken upon or placed upon the land by the Government shall remain the property of the Government and may be removed by the Government at any time within a reasonable period after the expiration of this right-of-entry.

5. If any action of the Government's officers, employees, agents, or contractors in the exercise of this right-of-entry results in damage to real property, an administrative claim can be made using a Standard Form (SF) 95 (Claim for Injury, Damage, or Death).  The SF 95 must include supporting documentation and state a claim for monetary damages in a sum certain amount for any alleged loss or damage of property, and must be filed within two years after the claim accrues.  Please submit the SF 95 and supporting documentation to the CBP Port of Entry or United States Border Patrol station nearest to where the alleged damages occurred.

6. The Property that is subject to this right-of-entry is located in the State of Texas, County of Hidalgo, and is shown on the attached Exhibit Map.

7. I affirm that I have the authority to grant this right-of-entry onto the Property described above.

8. As of this date, there are no plans to build north of the levee in the area of this property.

1



**Border Infrastructure Project(s)**                     **DACW63-9-18-_____**

Dated this _____ day of _____, 20____        THE UNITED STATES OF AMERICA

_____        By: _____
Owner's signature                                         Loren Flossman, Director
                                                          Border Patrol Air and Marine
_____               Program Management Office,
Owner's printed name                                      Facilities Management and
                                                          Engineering,
Owner's mailing address:                                  U.S. Customs and Border Protection,
_____               Department of Homeland Security

_____

_____

_____

Home Telephone: _____

Work Telephone: _____

**Owner requires notification prior to entry.   Yes    No    (please circle one)**

If yes, please provide the primary and alternate point of contact (POC) and phone
number and/or email.
Primary POC: _____
Alternate POC: _____

2

**Border Infrastructure Project(s)**                                  **DACW63-9-18-_____**

## CERTIFICATE OF AUTHORITY
*(applicable for Corporations and Organizations)*

**I,** _____*(name)*, certify that I am the _____

*(position held in organization)* of the _____*(organization)*, duly organized

and registered in the State of Texas; that _____*(executor of*

*instrument)*, who signed the foregoing instrument on behalf of the grantor, was then

_____*(position of executor of instrument)* of said

_____*(organization)*.  I further certify that the said officer was acting

within the scope of powers delegated to this officer by the governing body of the grantor in

executing said instrument.

**IN WITNESS WHEREOF,** I have hereunto set my hand, and the seal of the

_____*(organization)*, this _____day of_____,

20_____.

By: _____

Typed Name: _____

Title: _____

**NOTE**:  THE PERSON SIGNING THE ABOVE CERTIFICATE <u>CANNOT</u> BE THE SAME
PERSON THAT SIGNED THE RIGHT-OF-ENTRY.

3

**Border Infrastructure Project(s)**                          **DACW63-9-18-_____**

CONSENT OF TENANT:  *(if applicable)*

I hereby consent to the use of the property by the Government in accordance with this right-of-entry.

_____
Tenant's Signature

_____
Tenant's Printed Name

Owner's Mailing Address:
_____

_____

_____

Home Telephone: _____

Work Telephone: _____

**Tenant requires notification prior to entry.     Yes          No     (please circle one)**

If yes, please provide the primary and alternate point of contact (POC) and phone number and/or email.
Primary POC: _____
Alternate POC: _____

1300 Pennsylvania Avenue NW
Washington, DC 20229



**U.S. Customs and
Border Protection**

I, LOREN FLOSSMAN, hereby declare as follows:

1.     I am employed as the Acquisition Program Manager, Wall Program Management Office, U.S. Border Patrol Program Management Office Directorate, U.S. Border Patrol, U.S. Customs and Border Protection, Department of Homeland Security. I make this declaration based on my personal knowledge of the matters recited, or based upon information available to me from the files maintained by my office in this matter.

2.     The United States has a vital interest in controlling its international borders. As part of the ongoing effort to secure the borders and reduce illegal immigration, Congress has ordered the construction of primary pedestrian levee fencing in Hidalgo County, Texas, and primary pedestrian fencing in Starr County, Texas, including additional physical barriers, roads, lighting and related infrastructure along the United States/Mexico border. Pursuant to the Act of Congress approved on March 23, 2018, as Public Law 115-141, div. F, tit. II, 132 Stat. 348, which appropriated the funds that shall be used for the taking, the Secretary of Homeland Security is to identify locations where such infrastructure would be most practical and effective in deterring smuggling and illegal entry.

3.     The United States requires immediate access to the subject land as a preliminary step toward meeting this Congressional mandate.

4.     Prior to the construction described in paragraph 2, the United States must identify potential sites for infrastructure, access roads, and staging and work areas needed for construction; conduct investigatory work to determine each site's suitability such as environmental, appraisal, archeological, survey and other preliminary testing; make final determinations as to the type and location of infrastructure to be built, if any; and acquire any property interests needed for

1

construction.  Only after these steps are completed can the United States begin construction.  All survey contracts have been awarded by the United States, meaning the United States must gain access to the property immediately to avoid contract delay costs.

5.      The subject land lies in close proximity to the United States/Mexico border.

6.      The subject land has been identified as a potential site for the construction of the infrastructure described in paragraph 2, or as a potential site for an access road or staging or work area.

7.      The United States requires physical access to the subject land to conduct the investigatory work discussed in paragraph 4 to determine the suitability of the site for the construction of the infrastructure described in paragraph 2, or for use as an access road or staging or work area.  This determination cannot be made without physical access to the subject land.

8.      The interest taken in the subject land is a temporary right of entry that is minimally intrusive and reserves to the landowner all rights and possessory interests that do not interfere with the government's access for investigatory work.

9.      The sum estimated as just compensation for this temporary access is one hundred and 00/100 dollars ($100.00), which was deposited in the registry of the court for the use and benefit of the persons entitled thereto based upon the Declaration of Taking for this case.

I declare the above information is true and correct to the best of my knowledge, information, and belief, under penalty of perjury.  I further declare that this Declaration was executed on this _05_ day of _Nov_____, 2018, in Washington, D.C.

LOREN FLOSSMAN
Acquisition Program Manager
Wall Program Management Office
U.S. Border Patrol Program Management Office Directorate
U.S. Border Patrol
U.S. Customs and Border Protection
Department of Homeland Security



GOVERNMENT
EXHIBIT
1-3

**DEPARTMENT OF THE ARMY**
GALVESTON DISTRICT, CORPS OF ENGINEERS
P. O. BOX 1229
GALVESTON, TEXAS  77553-1229

I, RHONDA G. BROWN, hereby declare as follows:

1.      I am employed as a Project Manager, with the United States Army Corps of Engineers.  I make this declaration based on my personal knowledge of the matters recited, or based upon information available to me from the files maintained by my office in this matter.

2.      There are four types of contracts necessary to assess potential sites for border security infrastructure: survey contracts, appraisal contracts, design/build contracts, and environmental assessment contracts. All of these contractors will require access to land necessary for construction, operation, and maintenance of border security infrastructure.

3.      Both the metes and bounds survey contract and the environmental assessment contract for the RGV-04 Project have been awarded by the United States.

4.      The design/build construction contract for the RGV-04 Project should be awarded by the United States on or around March 18, 2019.

5.      A metes and bounds survey must be performed to define the boundaries of potential sites for infrastructure. This effort is being accomplished using existing 35% concept drawing plans.

6.      The metes and bounds survey contractor has already begun surveying tracts within RGV-04 for which the Government has secured voluntary Rights of Entry and is scheduled to conclude field work within the next 60 days.

1
*Affidavit by Rhonda G. Brown*

7.     Final design by the design/build contractor requires topographic surveys and geotechnical borings to establish cut/fill, soil stabilization requirements and design parameters for the border security infrastructure. Design efforts in RGV-04 are scheduled to begin on or about March 29, 2019.

8.     RGV-04 contains one hundred nine (109) non-federally owned tracts of land that need to be surveyed and assessed as potential sites for border security infrastructure.

9.     The landowners of one hundred four (104) of these tracts have granted permission to the United States to access their land to conduct the necessary metes and bounds survey and site assessment by the necessary contractors.

10.     There are five tracts remaining in RGV-04 that the United States has not obtained the right to access for survey and assessment, the real property for these five tracts is identified in the following condemnation actions:

    a.   Tract RGV-WSL-1014: *United States v. 5.06 Acres of Land, More or Less, Situate in Hidalgo County, State of Texas; and Jose Arnoldo Aguilar*; Civil Cause No. 7:18-cv-307.

    b.   Tract RGV-WSL-1021: *United States v. 26.000 Acres of Land, More or Less, Situate in Hidalgo County, State of Texas; and The Pharr Oratory of St. Philip Neri of Pontifical Rite, a Texas Non Profit Corp.*; Civil Cause No. 7:18-cv-303.

    c.   Tracts RGV-MCS-2212 and RGV-MCS-2217: *United States v. 65.791 Acres of Land, More or Less, Situate in Hidalgo County, State of Texas; and The Roman Catholic Diocese of Brownsville, Texas, Acting by and Through its Bishop, Daniel E. Flores, as Bishop of the The Roman Catholic Diocese of Brownsville, and for his Successors in Office, et al.*; Civil Cause No. 7:18-cv-329.

    d.  Tract RGV-WSL-2012: *United States v. 2.69 Acres of Land, More or Less, Situate in Hidalgo County, State of Texas; and F.E. & J.A. Knapp Limited Partnership*; Civil Cause No. 7:18-cv-366.

11.    The United States needs possession of the temporary estate identified in Schedule G of the Declaration of Taking (Dkt. No. 2) for each of the above referenced civil actions by December 11, 2018, to access these last remaining parcels.

I declare the above information is true and correct to the best of my knowledge, information, and belief, under penalty of perjury.  I further declare that this Declaration was executed on this 4th day of December, 2018, in McAllen, Texas.

Rhonda G. Brown
Project Manager
United States Army Corps of Engineers

3

*Affidavit by Rhonda G. Brown*